JS-6

FILED
CLERK, U.S. DISTRICT COURT

12/5/2017

CENTRAL DISTRICT OF CALIFORNIA
BY:     CW     DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation, | Case No. 2:17-cv-06724-MWF-SS |
|         Plaintiff, | **CONSENT DECREE** |
|    vs. | |
| TEKNOR APEX COMPANY, a corporation, | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 _et seq._)** |
|        Defendant. | |

LOS ANGELES WATERKEEPER
Arthur Pugsley (State Bar No. 252200)
Melissa Kelly (State Bar No. 300817)
    E-mail: arthur@lawaterkeeper.org
         melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendant Teknor Apex Company ("Defendant" or "Teknor"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Teknor is the owner and operator of a plastics manufacturing facility located at 420 6th Avenue in City of Industry, California, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS**, Waterkeeper represents it has approximately 3,000 members who live and/or recreate in and around the Los Angeles area waterbodies receiving discharges from the Facility, including the San Gabriel River, San Gabriel River Estuary, San Pedro Bay, and the Pacific Ocean;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order

97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

WHEREAS, the Permit includes the following requirements for all permittees, including Teknor: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs") to be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any violation of Permit requirements;

WHEREAS, on December 20, 2016, Waterkeeper served Teknor, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice letter"), alleging violations of the Act and the Permit at the Facility;

WHEREAS, on March 24, 2017, Waterkeeper served Teknor, the Administrator of the EPA, the Executive Director of the State Board, the Executive

Officer of the Regional Board, the U.S. Attorney General, and the Regional

Administrator of the EPA (Region 9) with a subsequent 60-Day Notice letter under

Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A),

alleging additional violations of the Act and the Permit at the Facility;

**WHEREAS**, the Parties engaged in settlement negotiations and reached an

agreement in the form of this Consent Decree to be filed on the same date as the

Complaint in this matter;

**WHEREAS**, on September 13, 2017, Waterkeeper filed a complaint against

Teknor in the United States District Court, Central District Court of California,

entitled *Los Angeles Waterkeeper v. Teknor Apex Company* (Case No. 2:17-cv-06724-

MWF-SS); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. §

1311(a), and violations of the Permit at the Facility ("Complaint") based on the two

60-Day Notice letters;

**WHEREAS**, Waterkeeper contends in its 60-Day Notice letters and Complaint

that, among other things, Teknor has repeatedly discharged polluted storm water in

violation of the Permit and the Clean Water Act;

**WHEREAS**, Teknor denies the allegations set forth in the 60-Day Notice

letters and Complaint;

**WHEREAS**, the Settling Parties, through their authorized representatives and

without either adjudication of Waterkeeper's claims or any admission by Teknor of

any alleged violation or other wrongdoing, believe it is in their mutual interest and

choose to resolve in full Waterkeeper's allegations in the 60-Day Notice letters and

Complicant through settlement and avoid the cost and uncertainties of further litigation;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.  OBJECTIVES

6. It is the express purpose of the Settling Parties entering into this Consent

Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to resolve those issues alleged by Waterkeeper in its Complaint.

## II.   COMMITMENTS OF TEKNOR

7.     In order to reduce or prevent pollutants associated with industrial activity from discharging via storm water to the waters of the United States, Teknor shall implement appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8.     **Maintenance of Implemented Storm Water Controls.**  Teknor agrees that the Facility shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9.     **New Treatment System.**  By December 20, 2017, Teknor shall install a treatment system that is sized in accordance with the requirements for flow-based BMPs set forth in the General Permit and would achieve compliance with the action levels provided its Permit.  This system would treat all industrial storm water discharges from the Facility.  Within seven (7) days of installation of the treatment system, Teknor shall send Waterkeeper digital photos confirming the installation.

10.     **Improvements to Housekeeping Practices.**  To reduce the potential for oil and grease to be contained in the Facility's storm water dischargers, by December 20, 2017, Teknor shall install a railcar drip pan to collect spillage from the unloading process.

11. **Storm Water Sampling and Monitoring**

   a. Teknor shall analyze all storm water samples collected at the Facility for the following parameters: pH, total suspended solids, oil & grease, zinc, copper, and lead.

   b. Teknor shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. Teknor shall select analytical test methods from the list provided in Table 2 of the Permit.

12. **Analysis of Subsurface Drainage.** By a date six months after this Consent Decree is entered by the Court, Teknor shall engage a qualified professional to analyze and verify the directions of all subsurface storm water conveyances at the Facility. This analysis would include the drain in the covered oil area near the railroad line as well as the roof downspouts near the railroad line.

13. **Updates to SWPPP Map.** Within sixty (60) days of the analysis of subsurface drainage conducted pursuant to Paragraph 12, Teknor shall update the site maps included in its SWPPP for the Facility to depict changes made to the Facility's storm water management practices, including those described in Paragraph 9 as well as any necessary adjustments to the map pursuant to the subsurface drainage analysis.

14. **Amendment of SWPPP.** Within sixty (60) days of the updates to the SWPPP map conducted pursuant to Paragraph 13, Teknor shall amend the Facility's SWPPP to incorporate all changes, improvements, and best management practices set forth in or resulting from this Consent Decree. Teknor shall ensure that all maps, tables, and text comply with the requirements of the Permit. Teknor shall revise the

SWPPP to describe all structural and non-structural BMPs, details of the measures to be installed, and discuss why such BMPs should be effective in addressing the pollutant sources at the Facility. A copy of the amended SWPPP shall be provided to Waterkeeper within thirty (30) days of completion.

15. **Reports.** During the term of this Consent Decree, Teknor shall provide Waterkeeper with a copy of all documents submitted to the Regional Board or the State Board concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the Permit, with such documents and reports to be mailed to Waterkeeper contemporaneously with submission to such agency. Alternatively, to the extent that Teknor submits such documents to the Regional Board or State Board via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS"), Teknor may satisfy this requirement by providing notice to Waterkeeper via e-mail that said results have been uploaded to SMARTS within seven (7) days of uploading said results. Within fourteen (14) days of a written request (via e-mail or regular mail) by Waterkeeper, Teknor also shall provide Waterkeeper a copy of these documents referenced in this Consent Decree from the year prior to the request, including but not limited to logs, photographs, or analyses.

III. **ANNUAL MEET AND CONFER**

16. Once per Reporting Year, each party may elect to meet and confer regarding compliance with any provision of this Consent Decree or the Permit. Upon written notice to the other party briefly outlining the reasons, the parties and/or their

representative including their designated environmental consultant(s) shall meet and confer within 30 days thereafter unless such time period is extended by mutual agreement. By mutual agreement, a conference call may substitute for a face to face meeting. The agenda for such a meeting shall include any item raising a good faith issue of compliance with this Consent Decree or the Permit, and may include any other issue agreed to by the parties.

17. The parties agree not to invoke the provisions in paragraph 16 without a good faith basis. By way of an example, and without excluding or limiting any other good faith basis, the meet and confer provisions could be invoked if sampling results indicate an exceedance of any applicable reporting standard or numeric limitation, and it appears an adjustment to the treatment medium or other BMP(s) is appropriate.

18. The parties agree to work in good faith to resolve any concerns raised by either party in the meet and confer process in a timely manner, provided that good faith disagreement on potential remedial actions, if any, shall not constitute a violation of this Consent Decree.

19. Any failure by a party to invoke its meet and confer rights in a Reporting Year shall be deemed to be an admission by that party for that reporting year that no such meet and confer process is necessary. Such admission shall apply only to the meet and confer process for that Reporting Year and shall not relieve any party of any other duties under this Consent Decree or the Permit.

## IV. <u>MITIGATION, FEES AND COSTS, AND OVERSIGHT</u>

20. **Mitigation Payment**. In recognition of the good faith efforts by Teknor

to comply with all aspects of the Permit and the Clean Water Act at the Facility, and in lieu of payment by Teknor of any penalties, which may have been assessed in this action if it had been adjudicated adverse to Teknor, the Parties agree that Teknor will pay the sum of twenty-five thousand dollars ($25,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects in the San Gabriel River Watershed relating to water quality improvements.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 1970 Broadway, Suite #600, Oakland, CA 94612, Attn: Tim Little.  Payment shall be made by Teknor to the Rose Foundation within fifteen (15) calendar days of the Effective Date.  Teknor shall copy Waterkeeper with any correspondence and a copy of the check sent to the Rose Foundation.  The Rose Foundation shall provide notice to the Parties within thirty (30) days of when the funds are disbursed by the Rose Foundation, setting forth the recipient and purpose of the funds.

21. **Reimbursement of Fees and Costs.**  Teknor shall reimburse Waterkeeper in the amount of Sixty-seven Thousand dollars ($67,000) to help defray Waterkeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Teknor's attention, and negotiating a resolution of this action in the public interest.  Teknor shall tender said payment, payable to "Los Angeles Waterkeeper", within fifteen (15) days of the Effective Date.

22. **Compliance Monitoring Funds.**  As reimbursement for Waterkeeper's future fees and costs that will be incurred in order for Waterkeeper to monitor Teknor's compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results for the Facility, Teknor agrees to pay Waterkeeper the amount of ten thousand dollars ($10,000) for its costs to be incurred in overseeing the implementation of this Consent Decree.  Teknor shall make payment to Waterkeeper within forty-five (45) calendar days of the Effective Date.  Payment by Teknor to Waterkeeper shall be made in the form of a single check payable to "Los Angeles Waterkeeper."

## V.  COMMITMENTS OF WATERKEEPER

23. **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Waterkeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## VI.  WAIVER, RELEASES AND COVENANTS NOT TO SUE

24.  In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties on behalf of themselves and their respective parents, affiliates, subsidiaries, divisions, successors, assigns, current and former employees,

attorneys, officers, directors and agents hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Waterkeeper's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

25.     The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

26.     **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and Teknor expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this

Consent Decree constitute or be construed as an admission by Teknor of any fact, finding, conclusion, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VII.   BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

27.   **Dispute Resolution.**   If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the

resolution of any disputes before the District Court. The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

28. **Force Majeure**. Teknor will notify Waterkeeper if timely implementation of Teknor's respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of Teknor or its agents, and which could not have been reasonably foreseen and prevented by the respective Teknor's exercise of due diligence, including delays in permit issuance. Any delays due to the Teknor's respective failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond Teknor's control. Financial inability will not, in any event, be considered to be circumstances beyond the Teknor's control.

a. If Teknor claims impossibility, it will notify Waterkeeper in writing within forty five (45) days of the date that Teknor discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree, or the date Teknor should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by Teknor to prevent or minimize the non-

performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. Teknor will adopt all reasonable measures to avoid and minimize such non-performance.

b. The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Teknor, due to circumstances beyond the control of Teknor that could not have been reasonably foreseen and prevented by the exercise of due diligence by Teknor, new performance deadlines will be established.

c. If Waterkeeper disagrees with Teknor's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraph 27 of this Consent Decree. In such proceeding, Teknor will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VIII. MISCELLANEOUS PROVISIONS

29. **Effective Date.** The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

30. **Term of Consent Decree.** This Consent Decree shall terminate on

January 1, 2019, or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to January 1, 2019, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

31. **Execution in Counterparts.** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

32. **Facsimile Signatures.** The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

33. **Construction.** The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

34. **Authority to Sign.** The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

35. **Integrated Consent Decree.** All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

36. **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

37. **Choice of Law.** This Consent Decree shall be governed by the laws of

the United States, and where applicable, the laws of the State of California.

38. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

39. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

40. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

41. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

42. **Mailing of Documents to Waterkeeper/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Waterkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Los Angeles Waterkeeper:

Arthur Pugsley
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
E-mail: arthur@lawaterkeeper.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
E-mail: doug@lozeaudrury.com

Unless requested otherwise by Teknor, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Teknor pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Teknor:

Mr. Bahman Dariush
Plant Manager
Teknor Apex
420 South 6th Ave
City of Industry, CA 91746
Email: bdariush@teknorapex.com

With copies sent to:

Peter Hsiao
Morrison & Foerster LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
E-mail: PHsiao@mofo.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

43. If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

44. The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

LOS ANGELES WATERKEEPER

Date: September 24, 2017

Bruce Reznik
Executive Director
Los Angeles Waterkeeper

TEKNOR APEX COMPANY

Date: Oct. 3, 2017

Mr. Bahman Dariush
Plant Manager

Approved as to form:

LOZEAU DRURY LLP

Date: 28 September, 2017

Douglas Chermak
Attorneys for Los Angeles Waterkeeper

LOS ANGELES WATERKEEPER

Date: Sept. 28, 2017

Arthur Pugsley
Attorney for Los Angeles Waterkeeper

19

MORRISON & FOERSTER LLP

Date: _____ , 2017

_____
Peter Hsiao
Attorney for Teknor Apex Company

**IT IS SO ORDERED.**

Date:   December 5, 2017

_____
Honorable Michael W. Fitzgerald
United States District Court Judge
Central District of California